**Marjorie A. Elken, OSB #073368**
**mae@buckley-law.com**
BUCKLEY LAW P.C.
5003 Meadows Road, Suite 200
Lake Oswego, OR 97035
Telephone:    503.620.8900
Facsimile:     503.620.4878

**C. Robert Steringer, OSB #983514**
**bob.steringer@harrang.com**
HARRANG LONG GARY RUDNICK P.C.
1001 S.W. Fifth Ave., 16th Floor
Portland, Oregon  97204
Telephone:    503.242.0000
Facsimile:     503.968.8017

Of Attorneys for Plaintiff MALBCO HOLDINGS, LLC,
a Washington limited liability company

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **MALBCO HOLDINGS, LLC**, a Washington limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>**BHUPENDRA R. PATEL and NILA B. PATEL,** husband and wife; **HEETAN B. PATEL; HEETAL B. PATEL-MANANI**; and **MUKESH PATEL**,<br><br>　　　　　Defendants. | Case No. 3:14-cv-947-PK<br><br>**SECOND AMENDED COMPLAINT**<br>**Fraudulent Transfer**<br>**(28 USC § 1332)**<br><br>**DEMAND  FOR JURY TRIAL** |

Page 1 –    **SECOND AMENDED COMPLAINT**

Malbco Holdings, LLC ("Malbco") alleges as follows:

## PARTIES

1.    Malbco is a Washington limited liability company with its principal place of business at 16114 E. Indiana Avenue, Suite 200, Spokane, Washington 99216.

2.    Defendants Bhupendra R. Patel and Nila B. Patel (the "Patel Parents") are husband and wife and reside in Clackamas County, Oregon.  Nila Patel also spells her name "Neela."

3.    Defendant Heetan B. Patel ("Heetan Patel") is Bhupendra and Nila Patel's son, and he resides in Clackamas County, Oregon.

4.    Defendant Heetal B. Patel ("Heetal Patel") is Bhupendra and Nila Patel's daughter, and she resides in Clackamas County, Oregon.  Heetal Patel also goes by the name of Heetal B. Patel-Manani.

5.    Defendant Mukesh Patel is Bhupendra R. Patel's brother, and he resides in Happy Valley, Oregon.

## JURISDICTION AND VENUE

6.    This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §1332.  Complete diversity of citizenship exists because the action involves a controversy between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

//

## GENERAL ALLEGATIONS
### Bhupendra R. Patel and Nila B. Patel's Debt to Malbco

8.    On or about June 8, 2006, Wachovia Commercial Mortgage, Inc. ("Wachovia") extended credit to Om Namah Laxmi, LLC in the amount of $4,357,415.00.  At the time, the Patel Parents owned 50% of the membership interests in Om Namah Laxmi.

9.    In consideration of this extension of credit, Om Namah Laxmi executed and delivered to Wachovia a promissory note in the principal amount of $4,357,415.00 payable according to the terms thereof (the "Note").

10.    In further consideration of this extension of credit, on June 6, 2006, Om Namah Laxmi executed and delivered to Wachovia a deed of trust conveying certain real property in Ada County, Idaho, to a trustee for the benefit of Wachovia to secure payment on the Note (the "Trust Deed").

11.    On June 6, 2006, the Patel Parents each executed and delivered to Wachovia a commercial guaranty in which they guaranteed the full indebtedness set forth in the Note ("Personal Guaranties").  Copies of the Personal Guaranties are attached hereto and incorporated herein as **Exhibit 1** and **Exhibit 2**.

12.    In June 2006, the Patel Parents owned 100% of the membership interests in Budget Inn OMRS, LLC ("Budget Inn").  On June 6, 2006, Bhupendra Patel caused Budget Inn to execute and deliver to Wachovia a commercial guaranty in which it guaranteed the full indebtedness set forth in the Note (the "Budget Inn Guaranty").

13.     On May 1, 2011, Wells Fargo Bank, N.A., as Wachovia's successor-by-merger, and Om Namah Laxmi entered into a note modification agreement in which the indebtedness set forth in the Note was reamortized over a period of 30 years (the "Modification Agreement").

14.     In January 2012, Wells Fargo Bank, N.A., as Wachovia's successor-by-merger, appointed a receiver over the hotel owned by Om Namah Laxmi in anticipation of foreclosure.

15.     On March 22, 2012, Wells Fargo Bank, N.A., as Wachovia's successor-by-merger, assigned all of its right, title, and interest in the Note, Trust Deed, Personal Guaranties and Modification Agreement to Malbco. A copy of this assignment is attached here to and incorporated herein as **Exhibit 3**. The assignment was recorded in the office of the Ada County Recorder on March 28, 2012 as Instrument No. 112027771.

16.     Om Namah Laxmi breached its obligation on the Note by failing to make payments when due, and Malbco foreclosed on the Trust Deed.  The real property described in the Trust Deed was duly sold on August 17, 2012, to Malbco for the credit bid of $1,525,000.00.

17.     On September 28, 2012, Malbco filed a complaint in Ada County, Idaho, against the Patel Parents for breach of the Personal Guaranties (the "Idaho Lawsuit").

18.     On December 3, 2013, the Ada County Circuit Court awarded summary judgment in favor of Malbco in the Idaho Lawsuit.

19.    On December 20, 2013, the Ada County Circuit Court entered judgment against the Patel Parents and in favor of Malbco for $3,903,294.12, plus post-judgment interest (the "Idaho Judgment").

20.    On or around February 19, 2014, Malbco registered the judgment in the State of Oregon, Multnomah County Circuit Court.

21.    The judgment remains unsatisfied.

### The Patel Parents' Transfers to their Children

22.    As of 2010, the Patel Parents owned, among other things, the following assets:

a)    100% of the membership interests in: (i) Budget Inn; (ii) Best Western Sandy Inn OMRS, LLC ("Best Western"); (iii) Econolodge Airport OMRS, LLC ("Econolodge"); and (iv) HMB Hospitality Group, LLC ("HMB");

b)    100% of the stock in OMRS, Inc.;

c)    A two-acre parcel of real property on Highway 26 in Sandy, Oregon;

d)    50% of the membership interests in Om Namah Laxmi;

e)    33% of the membership interests in Om Shiv Ganesh, LLC;

f)    25% of the membership interests in Valu-Inn Shree Raj, LLC; and

g)    16.6% of the membership interests in Om Clackamas, LLC.

23.    The Patel Parents signed numerous personal guaranties guaranteeing payment of multiple millions of dollars of debts for the companies listed in Paragraph 22, including the personal guaranties mentioned in Paragraph 11.

24.     By the end of 2011 and the beginning of 2012, several of the Patel Parents' companies were in financial distress, and the Patel Parents' personal guaranties were in jeopardy.

25.     During this same time period, despite knowing that they had and would continue to incur significant liabilities and debts, the Patel Parents started a course of action to make themselves judgment proof and to hinder and defraud creditors, like Malbco, from collecting on any of their assets.

26.     In or around June of 2012, the Patel Parents gifted multiple assets to their children, Heetan and Heetal Patel, for no consideration.  The transfers included, without limitation, the following:

       a)     90% of their ownership interests in Econolodge to Heetan and Heetal Patel.

       b)     90% of their ownership interests in Best Western to Heetan and Heetal Patel.

       c)     Simultaneously: their ownership of the two-acre parcel of real property located on Highway 26 in Sandy, Oregon, to HMB and 90% of their ownership interests in HMB to Heetan and Heetal Patel.

27.     The Patel Parents backdated these transfers to January 1, 2011.

28.     Between July 2011 and November 2013, the Patel Parents also gifted over $250,000 in cash to their children, Heetan and Heetal Patel.

29.     In or around June 2012, the Patel Parents also allowed OMRS, Inc. to go out of business after they switched the management of the hotels owned by Econolodge, Best Western and Budget Inn from OMRS, Inc. to Boomerang Management, a company owned by Heetan and Heetal Patel.

30.     Up until December 2013, Econolodge, Best Western and HMB were Oregon limited liability companies.  On December 3, 2013 – the day Malbco won summary judgment against the Patel Parents in the Idaho Lawsuit – Heetean B. Patel or Heetal B. Patel converted Econolodge, Best Western and HMB into Nevada limited liability companies.  One week later, Mukesh Patel caused Valu-Inn Shree Raj, LLC to be converted from an Oregon limited liability company to a Nevada limited liability company.

### The Patel Parents' Transfers to Mukesh Patel

31.     The Patel Parents also took several actions during this same time frame to encumber their remaining assets that could not be transferred, such as the equity in their home and non-transferrable limited liability company interests.  They granted Bhupendra Patel's brother, Mukesh Patel, a lien on all of their personal property assets, and a trust deed on their home.  The liens were created through a series of sham transactions, the sole purposes of which was to hinder and defraud creditors.

32.     On December 4, 2007, Om Namah Laxmi executed and delivered a promissory note in the original principal amount of $200,000 to Mountain West Bank (the "MWB Note 1").

33. On August 13, 2008, Om Namah Laxmi, Radha Kishan Inc., Kanti Patel, Bharti Patel and the Patel Parents executed and delivered a second promissory note in the original principal amount of $820,000 to Mountain West Bank (the "MWB Note 2").

34. The Patel Parents executed and delivered commercial guaranties guarantying Om Namah Laxmi's payment and performance of the MWB Note 1 and the MWB Note 2.

35. On or around August 13, 2008, Budget Inn executed and delivered to Mountain West Bank several security documents securing the MWB Note 2, including a deed of trust covering the hotel that Budget Inn owned.

36. As stated above, Om Namah Laxmi was one of the primary obligors on the MWB Note 1 and the MWB Note 2. In May of 2012, shortly after Wells Fargo had appointed a receiver over Om Namah Laxmi's property, Mountain West Bank filed a lawsuit in Clackamas County Circuit Court (Case Number CV12050157) against Budget Inn, Om Namah Laxmi, the Patel Parents ("MWB Lawsuit"). The MWB Lawsuit included claims for, among other things, breach of the MWB Note 1 and the MWB Note 2, and breach of the guaranties guarantying those notes. It sought foreclosure of the trust deed on the Budget Inn hotel.

37. On August 16, 2012, Bhupendra Patel's brother, Mukesh Patel, started a company called McLoughlin Lodging Company, LLC ("MLC"). One week later, MLC purchased the MWB Note 1 and the MWB Note 2, including the guaranties and security documents that secured those notes, and became the plaintiff in the MWB Lawsuit against Budget Inn and the Patel Parents.

38.     MLC never took any steps to obtain a judgment against Budget Inn or the Patel Parents, or to collect on the notes it purchased.

39.     In January 2013, MLC "settled" the claims in the MWB Lawsuit that had been brought against the Patel Parents individually. The Patel Parents agreed to settle the claims for agreeing to pay $325,000. The settlement was secured by a lien on all of the Patel Parents' assets. Neither the Patel Parents, nor MLC, took any steps to effectuate the settlement. The settlement agreement included a promissory note that required the Patel Parents to make monthly payments of $1,498.12, commencing in January 2013. No payments were made on the settlement agreement, and no attempts were taken to collect on the debt.

40.     A few days after entering into the settlement, and while MLC was still pursuing its foreclosure lawsuit against Budget Inn, MLC extended Budget Inn a $500,000 line of credit, secured by all of Budget Inn's and the Patel Parents' assets. MLC failed to record the security interest against the hotel and its personal property, but it recorded its security interest against the Patel Parents (the "Security Interest"). MLC filed a UCC Financing Statement evidencing the Security Interest on January 18, 2013. A true and correct copy of the UCC Financing Statement is attached hereto as **Exhibit 4** and incorporated herein by this reference.

41.     In or around October 2013, Budget Inn settled the MWB Lawsuit by giving MLC a deed in lieu of foreclosure on all of its property.

42.     In November 2013, Bhupendra Patel and his brother restated the $500,000 line of credit agreement to make it a personal obligation of the Patel Parents because

"Budget Inn transferred its assets, and is no longer operating or able to pay the Indebtedness under the terms of the LOC Agreement." A copy of the Amended and Restated Line of Credit Agreement is attached hereto as **Exhibit 5** and incorporated herein by this reference.

43.    On December 4, 2013—the day after Malbco won summary judgment against the Patel Parents in the Idaho Lawsuit—the Patel Parents caused a Line of Credit Deed of Trust to be filed against their primary residence (the "Mukesh Deed of Trust"). A copy of the Mukesh Deed of Trust is attached hereto and incorporated herein as **Exhibit 6**.

44.    The Patel Parents received nothing in value in exchange for giving Mukesh Patel a deed on their house or the security interests in their assets.  Additionally, the Patel Parents granted Mukesh Patel the deed on their house and the security interests in their assets for the sole purpose of defrauding and hindering creditors, including Malbco.

45.    Money is currently owing on the line of credit.

46.    The transfers described in Paragraphs 22 through 45 (the "Transfers"), included substantially all of the Patel Parents' assets that had any value.

## FIRST CLAIM FOR RELIEF

### (Fraudulent Transfer - ORS 95.240)

### (Against all defendants)

47.    Malbco realleges paragraphs 1 through 46 above.

48.     Malbco's claims against the Patel Parents existed at the time of the Transfers.

49.     Subject to proof at trial, Bhupendra Patel has represented that the values of the transferred assets were as follows:

a)      The 90% membership interest in Econolodge was worth $1,386,000.00.

b)      The 90% membership interest in Best Western was worth $2,070,000.00.

c)      The 2 acres of property on Highway 26 in Sandy, Oregon was worth $495,000.00.

d)      The money transferred to Heetan and Heetal Patel was worth a total of $250,000.00.

e)      The Mukesh Trust Deed and the Security Interest were worth $500,000.

f)      The 90% membership interest in HMB was worth $202,500.

50.     Heetan Patel, Heetal Patel, and Mukesh Patel did not provide anything of value, or anything of reasonably equivalent value, in exchange for the Transfers.

51.     Based on, among other things, the multiple personal guaranties that they issued to secure various entities' debts, the Patel Parents were insolvent at the time of the Transfers or rendered insolvent as a result of the Transfers.

52.     Heetan Patel and Heetal Patel live with the Patel Parents and assist them with paying their bills.  Accordingly, they knew or had reasonable cause to believe that

the Patel Parents were insolvent at the time of the Transfers or would be rendered

insolvent as a result of the Transfers.

53.    Due to his close business and personal relationship with the Patel Parents,

Mukesh Patel knew or had reasonable cause to believe that the Patel Parents were

insolvent at the time of the Transfers or would be rendered insolvent as a result of the

Transfers.

54.    As a result of the unlawful Transfers Malbco has been damaged in the

amount of the Idaho Judgment.

55.    Malbco is entitled to judgment against Heetan Patel, Heetal Patel and

Mukesh Patel for the amount due under the Idaho Judgment or in the amount of the value

of the real and personal property at the time of the Transfers, whichever is less and

according to proof, plus pre-judgment interest until the judgment is paid in full.

56.    Malbco is also entitled to satisfy the unpaid debt owed by the Patel Parents

out of the funds and property transferred to Heetan Patel, Heetal Patel, and Mukesh Patel.

57.    The Patel Parents, Heetan Patel, Heetal Patel and Mukesh Patel knowingly

and willfully participated and engaged in the fraudulent Transfers and the other conduct

as alleged herein.  The Transfers were made in connection with and for the purpose of a

fraudulent transfer scheme.  Accordingly, Malbco is entitled to an award of punitive

damages pursuant to ORS 95.260(1)(C)(c), ORS 95.290, ORS 95.300 and case law.

58.    Malbco is also entitled to an award of its attorneys' fees in this action

pursuant to ORS 95.260(1)(C)(c), ORS 95.290, ORS 95.300 and case law.  Malbco is

also entitled to reasonable attorneys' fees against Bhupendra R. Patel and Nila B. Patel under the terms of the Personal Guaranties and ORS 20.096.

## SECOND CLAIM FOR RELIEF

### (Fraudulent Transfer - ORS 95.230)

### (Against all defendants)

59.    Malbco realleges paragraphs 1 through 58 above.

60.    As described above, the Patel Parents made the Transfers with actual intent to hinder, delay or defraud their creditors.  Among other factors:

    a)    The transfers were made to insiders, as that term is defined in ORS 95.200;

    b)    The Patel Parents concealed the transfers.  For example, the Patel Parents did not notify Wachovia, Wells Fargo Bank N.A. or Malbco of the transfers, despite their obligation to do so under the Personal Guaranties;

    c)    Before some of the Transfers were made, the Patel Parents were threatened with suit;

    d)    The Transfers included substantially all of the Patel Parents' assets that had any value;

    e)    The Patel Parents received no consideration for the Transfers;

    f)    The Patel Parents were insolvent at the time of the transfers or rendered insolvent as a result of the Transfers; and

g)     Some of the Transfers occurred shortly before and after substantial

debts were incurred.

61.     Due to their close personal and business relationships with the Patel

Parents, Heetan Patel, Heetal Patel, and Mukesh Patel were aware of the Patel Parents'

intent to hinder, delay or defraud their creditors.

62.     As described above, at the time of the Transfers the Patel Parents believed

or reasonably should have believed that they would incur debts beyond their ability to

pay as they became due.

63.     As a result of the unlawful Transfers Malbco has been damaged in the

amount of the Idaho Judgment.

64.     Malbco is entitled to judgment against Heetan Patel, Heetal Patel and

Mukesh Patel for the amount due under the Idaho Judgment or in the amount of the value

of the real and personal property at the time of the Transfers, whichever is less and

according to proof, plus pre-judgment interest until the judgment is paid in full.

65.      Malbco is also entitled to satisfy the unpaid debt owed by the Patel Parents

out of the funds and property transferred to Heetan Patel, Heetal Patel, and Mukesh Patel.

66.     The Patel Parents, Heetan Patel, Heetal Patel and Mukesh Patel knowingly

and willfully participated and engaged in the fraudulent Transfers and the other conduct

as alleged herein.  The Transfers were made in connection with and for the purpose of a

fraudulent transfer scheme.  Accordingly, Malbco is entitled to an award of punitive

damages pursuant to ORS 95.260(1)(C)(c), ORS 95.290, ORS 95.300 and case law.

Page 14 –  **SECOND AMENDED COMPLAINT**

67.    Malbco is also entitled to an award of its attorneys fees in this action pursuant to ORS 95.260(1)(C)(c), ORS 95.290, ORS 95.300 and case law.  Malbco is also entitled to reasonable attorneys' fees against Bhupendra R. Patel and Nila B. Patel under the terms of the Personal Guaranties and ORS 20.096.

68.    Malbco requests a trial by jury.

## PRAYER:

Malbco prays for the following relief:

1.    Judgment declaring the transfers to Heetan B. Patel, Heetal B. Patel and Mukesh Patel void;

2.    Judgment against Heetan B. Patel for the amount due under the Idaho Judgment or in the amount of the value of the real and personal property at the time of transfer, whichever is less and according to proof;

3.    Judgment against Heetal B. Patel for the amount due under the Idaho Judgment or in the amount of the value of the real and personal property at the time of transfer, whichever is less and according to proof;

4.    Judgment against Mukesh Patel for $500,000.00 (subject to proof at trial) plus pre-judgment interest from the date of transfer, until paid;

5.    An injunction prohibiting Heetan B. Patel, Heetal B. Patel and Mukesh Patel from transferring or disposing of any portion of the funds and property transferred to them;

6.     An attachment lien in favor of Malbco on the funds and property transferred from Bhupendra R. Patel or Nila B. Patel to Heetan B. Patel, Heetal B. Patel and Mukesh Patel;

7.     An injunction prohibiting Bhupendra R. Patel and Nila B. Patel from transferring any real or personal property owned by them, while this action is pending;

8.     The sale of the real property and personal property transferred, with the proceeds of the sale to be applied to Malbco's judgment against Bhupendra R. Patel and Nila B. Patel and any judgment rendered herein;

9.     Judgment against Defendants, jointly and severally, for Malbco's reasonable attorney fees;

10.     Judgment against Defendants, jointly and severally, for punitive damages;

11.     Malbco's costs and disbursements incurred herein; and

12.     Such other relief as this Court deems just and equitable.

DATED this _3rd_ day of May, 2016.


BUCKLEY LAW, P.C.


By: _____

Marjorie A. Elken, OSB No. 073368
mae@buckley-law.com
5300 Meadows Rd., Suite 200
Lake Oswego, OR 97035
Tel: (503) 620-8200/Fax: (503) 620-4878
    Of Attorneys for Plaintiff MALBCO
    HOLDINGS, LLC,
    a Washington limited liability company

# COMMERCIAL GUARANTY

| | | | |
|---|---|---|---|
| **Borrower:** | OM NAMAH LAXMI, L.L.C.<br>800 S. Allen Street<br>Meridian, ID 83642 | **Lender:** | Wachovia Commercial Mortgage, Inc.<br>1620 East Roseville Parkway, Suite 100<br>Roseville, CA 95661 |
| **Guarantor:** | Bhupendra R. Patel<br>9753 SE Westview Court<br>Portland, OR 97266 | | |

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) effect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under the Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**OBLIGATIONS OF MARRIED PERSONS.** Any married person who signs this Guaranty hereby expressly agrees that recourse under this Guaranty may be had against both his or her separate property and community property.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time; (A)  to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B)  to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C)  to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D)  to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H)  to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A)  no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B)  this Guaranty is executed at Borrower's request and not at the request of Lender; (C)  Guarantor has full power, right and authority to enter into this Guaranty; (D)  the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E)  Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F)  upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G)  no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H)  no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I)  Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J)  Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender to (A)  make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (B)  proceed against any person, including Borrower, before proceeding against Guarantor; (C)  proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Guarantor; (D)  apply any payments or proceed received against the Indebtedness in any order; (E)  give notice of the terms, time, and place of any sale of the collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F)  disclose any information about the Indebtedness, the Borrower, the collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (G)  pursue any remedy or course of action i Lender's power whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (H)  any disability or other defense of Borrower, any other guarantor c surety or any other person; (I)  the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (J)  the applicatio of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Guarantor and Lender; (K)  an act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarante or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (L)  any statute of limitations in an action under this Guaranty or on the Indebtedness; or (M)  any modification or change in terms of the Indebtedness, whatsoever, includin

EXHIBIT 1
Page 1 of 4

## COMMERCIAL GUARANTY
### (Continued)

without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Guarantor waives all rights and any defenses arising out of an election of remedies by Lender even though that the election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

Guarantor waives all rights and defenses that Guarantor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower. (2) If Lender forecloses on any real property collateral pledged by Borrower: (a) the amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (b) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Guarantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Guarantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Guarantor acknowledges that Guarantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Guarantor further understands and agrees that this Guaranty is a separate and independent contract between Guarantor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all of the Indebtedness is paid in full, Guarantor waives any right to enforce any remedy Guarantor may have against the Borrower or any other guarantor, surety, or other person, and further, Guarantor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Placer County, State of California.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

EXHIBIT 1
Page 2 of 4

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: 510438435                                                                                                    Page 3

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means OM NAMAH LAXMI, L.L.C. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Bhupendra R. Patel, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Wachovia Commercial Mortgage, Inc., its successors and assigns.

**Note.** The word "Note" means the promissory note dated ___6/8/06___, in the original principal amount of $4,357,415.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED ___6-6-06___.**

GUARANTOR:

X _Bhupendra R. Patel_
Bhupendra R. Patel

EXHIBIT 1
Page 3 of 4

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: 510438435                                                                      Page 4

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF ___Ohio___ }
                                                      } SS
COUNTY OF ___Cuyahoga___ }

On ___June 6___, 20 _06_ before me, ___Bhupendra P. Patel___
personally appeared Bhupendra R. Patel, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal.

Signature ___Sally A. Verdell___

SALLY A. VERDELL
Notary Public, State of Ohio
My Commission Expires June 13, 2009 (Seal)

LASER PRO Lending, Ver. 5.30.10.001 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - EA H:\CFI_WIN\CFI\LPL\E29.FC TR-1 (0439)3 PR-56

EXHIBIT 1
Page 4 of 4

*GUAR*

# COMMERCIAL GUARANTY

| | | | |
|---|---|---|---|
| **Borrower:** | OM NAMAH LAXMI, L.L.C.<br>800 S. Allen Street<br>Meridian, ID 83642 | **Lender:** | Wachovia Commercial Mortgage, Inc.<br>1620 East Roseville Parkway, Suite 100<br>Roseville, CA 95661 |
| **Guarantor:** | Neela B. Patel<br>9753 SE Westview Court<br>Portland, OR 97266 | | |

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability shall be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**OBLIGATIONS OF MARRIED PERSONS.** Any married person who signs this Guaranty hereby expressly agrees that recourse under this Guaranty may be had against both his or her separate property and community property.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A)  to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B)  to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C)  to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D)  to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H)  to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A)  no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B)  this Guaranty is executed at Borrower's request and not at the request of Lender; (C)  Guarantor has full power, right and authority to enter into this Guaranty; (D)  the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E)  Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F)  upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G)  no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H)  no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I)  Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J)  Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender to (A)  make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (B)  proceed against any person, including Borrower, before proceeding against Guarantor; (C)  proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Guarantor; (D)  apply any payments or proceeds received against the Indebtedness in any order; (E)  give notice of the terms, time, and place of any sale of the collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F)  disclose any information about the Indebtedness, the Borrower, the collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (G)  pursue any remedy or course of action in Lender's power whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (H)  any disability or other defense of Borrower, any other guarantor or surety or any other person; (I)  the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (J)  the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Guarantor and Lender; (K)  any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (L)  any statute of limitations in any action under this Guaranty or on the Indebtedness; or (M)  any modification or change in terms of the Indebtedness, whatsoever, including

EXHIBIT 2<br>Page 1 of 4

without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Guarantor waives all rights and any defenses arising out of an election of remedies by Lender even though that the election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

Guarantor waives all rights and defenses that Guarantor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower. (2) If Lender forecloses on any real property collateral pledged by Borrower: (a) the amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (b) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Guarantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Guarantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Guarantor acknowledges that Guarantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Guarantor further understands and agrees that this Guaranty is a separate and independent contract between Guarantor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all of the Indebtedness is paid in full, Guarantor waives any right to enforce any remedy Guarantor may have against the Borrower or any other guarantor, surety, or other person, and further, Guarantor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Placer County, State of California.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

EXHIBIT 2
Page 2 of 4

## COMMERCIAL GUARANTY
### (Continued)

**Loan No: 510438435**                                                                      **Page 3**

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means OM NAMAH LAXMI, L.L.C. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Neela B. Patel, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Wachovia Commercial Mortgage, Inc., its successors and assigns.

**Note.** The word "Note" means the promissory note dated __6|8|06__, in the original principal amount of $4,357,415.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED __6·8·06__.

**GUARANTOR:**

x _Neela. B. Patel_
  **Neela B. Patel**

EXHIBIT 2
Page 3 of 4

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: 510438435                                                                                    Page 4

---

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _Ohio_ )
                                                ) SS
COUNTY OF _Cuyahoga_ )

On _June 6, 2006_ , 20___ before me, _Neela B. Patel_ to be the person(s) whose personally appeared Neela B. Patel, personally known to me (or proved to me on the basis of satisfactory evidence) name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

**SALLY A. VERDELL**
Notary Public, State of Ohio
My Commission Expires June 13, 2009

(Seal)

LASER PRO Lending, Ver. 5.30.10.001  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - CA  R:\CFI_WIN\CFI\LPL\E20.FC  TR-1 10438435  PR-58

EXHIBIT 2
Page 4 of 4

ADA COUNTY RECORDER Christopher D. Rich  AMOUNT 28.00  7
BOISE IDAHO **03/28/2012**    11:20 AM
DEPUTY Bonnie Oberbillig
**Simplifile Electronic Recording**
**RECORDED-REQUEST OF**
FIRST AMERICAN TITLE AND ESCRO

**112027771**

NCS-728360
**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO:**

LUKINS & ANNIS, P.S.
Attn: Tyler Black
717 W. SPRAGUE AVENUE
SUITE 1600
SPOKANE, WA 99201

ELECTRONICALLY RECORDED - DO NOT
REMOVE THE COUNTY STAMPED FIRST
PAGE AS IT IS NOW INCORPORATED AS
PART OF THE ORIGINAL DOCUMENT.

**Space Above Line For Recorder's Use Only**

## ABSOLUTE ASSIGNMENT AND ASSUMPTION
## OF DEED OF TRUST AND LOAN DOCUMENTS

This ABSOLUTE ASSIGNMENT AND ASSUMPTION OF DEED OF TRUST AND LOAN DOCUMENTS (this "**Assignment**") is made as of March 22, 2012, by Wells Fargo Bank, National Association, successor-by-merger Wachovia Commercial Mortgage, Inc. ("**Assignor**"), in favor of Malbco Holdings, LLC ("**Assignee**").

1.    FOR VALUE RECEIVED, Assignor hereby absolutely and irrevocably endorses, negotiates, sells, assigns, conveys, and transfers to Assignee all of Assignor's right, title, and interest in and to the "**Loans**" (as such term is defined in Schedule 1 attached hereto and incorporated herein by this reference), including, without limitation, all of Assignor's right, title, and interest in and to the following:

(See attached Schedule 1)

2.    THIS ASSIGNMENT IS WITHOUT RECOURSE, REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, EXCEPT AS EXPRESSLY PROVIDED IN THAT CERTAIN LOAN SALE AGREEMENT, DATED AS OF MARCH 13, 2012, BETWEEN ASSIGNOR AND ASSIGNEE (THE "**LOAN SALE AGREEMENT**").

3.    Assignee hereby agrees to and accepts the assignment described in Paragraph 1 above. In addition, Assignee hereby expressly assumes and agrees to keep, perform, and fulfill all of the terms, covenants, obligations, and conditions required to be kept, performed, and fulfilled by Assignor under, and/or with respect to, the Loans from and after the date of this Assignment. Assignor hereby agrees to deliver to each person or entity currently obligated to pay and perform the obligations of the borrower under the Loans (the "**Borrower**") any notice required by law to inform such Borrower that Assignor has transferred its interest in the Loans to Assignee as of the date hereof. Assignee hereby indemnifies Assignor against, and shall defend and hold Assignor harmless from (using counsel reasonably satisfactory to Assignor), any and all damages, liabilities, costs, expenses, and losses (including, without limitation, attorneys' fees and costs) that Assignor may sustain or incur directly or indirectly arising out of or related to any breach or default in Assignee's obligations under the Loans or in Assignee's obligations hereunder, from and after the Closing Date.

EXHIBIT 3
Page 1 of 8

1

NCS-228360
**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

LUKINS & ANNIS, P.S.
Attn: Tyler Black
717 W. SPRAGUE AVENUE
SUITE 1600
SPOKANE, WA 99201

ELECTRONICALLY RECORDED - DO NOT
REMOVE THE COUNTY STAMPED FIRST
PAGE AS IT IS NOW INCORPORATED AS
PART OF THE ORIGINAL DOCUMENT.

**Space Above Line For Recorder's Use Only**

## ABSOLUTE ASSIGNMENT AND ASSUMPTION
## OF DEED OF TRUST AND LOAN DOCUMENTS

This ABSOLUTE ASSIGNMENT AND ASSUMPTION OF DEED OF TRUST AND LOAN DOCUMENTS (this "**Assignment**") is made as of March __22__, 2012, by Wells Fargo Bank, National Association, successor-by-merger Wachovia Commercial Mortgage, Inc. ("**Assignor**"), in favor of Malbco Holdings, LLC ("**Assignee**").

1.    FOR VALUE RECEIVED, Assignor hereby absolutely and irrevocably endorses, negotiates, sells, assigns, conveys, and transfers to Assignee all of Assignor's right, title, and interest in and to the "**Loans**" (as such term is defined in Schedule 1 attached hereto and incorporated herein by this reference), including, without limitation, all of Assignor's right, title, and interest in and to the following:

(See attached Schedule 1)

2.    THIS ASSIGNMENT IS WITHOUT RECOURSE, REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, EXCEPT AS EXPRESSLY PROVIDED IN THAT CERTAIN LOAN SALE AGREEMENT, DATED AS OF MARCH 13, 2012, BETWEEN ASSIGNOR AND ASSIGNEE (THE "**LOAN SALE AGREEMENT**").

3.    Assignee hereby agrees to and accepts the assignment described in Paragraph 1 above. In addition, Assignee hereby expressly assumes and agrees to keep, perform, and fulfill all of the terms, covenants, obligations, and conditions required to be kept, performed, and fulfilled by Assignor under, and/or with respect to, the Loans from and after the date of this Assignment. Assignor hereby agrees to deliver to each person or entity currently obligated to pay and perform the obligations of the borrower under the Loans (the "**Borrower**") any notice required by law to inform such Borrower that Assignor has transferred its interest in the Loans to Assignee as of the date hereof. Assignee hereby indemnifies Assignor against, and shall defend and hold Assignor harmless from (using counsel reasonably satisfactory to Assignor), any and all damages, liabilities, costs, expenses, and losses (including, without limitation, attorneys' fees and costs) that Assignor may sustain or incur directly or indirectly arising out of or related to any breach or default in Assignee's obligations under the Loans or in Assignee's obligations hereunder, from and after the Closing Date.

EXHIBIT 3
Page 2 of 8

1

4.     Without limiting the generality of Paragraph 3 above, Assignee also hereby acknowledges and agrees that it shall be solely responsible for compliance with any laws, rules, or regulations governing the ownership, servicing, and/or administration of the Loans from and after the Closing Date.

5.     Assignee specifically indemnifies Assignor against, and shall defend and hold Assignor harmless from (using counsel reasonably satisfactory to Assignor), any and all damages, liabilities, costs, expenses, and losses (including, without limitation, attorneys' fees and costs) that Assignor may sustain or incur by reason of Assignee's failure to comply with the terms and conditions of the Loan Sale Agreement and the foregoing Paragraph 4.

6.     The provisions of this Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective heirs, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Absolute Assignment and Assumption of Deed of Trust and Loan Documents as of the date first set forth above.

"Assignor"
Wells Fargo Bank, National Association

By:
Name:    Stephen F. Marduart
Title:     Senior Vice-President

"Assignee"
Malbco Holdings, LLC

By:
Name:    James Mulloy
Title:    Managing Member

*[Acknowledgments on next page]*

EXHIBIT 3
Page 3 of 8

2

4.    Without limiting the generality of Paragraph 3 above, Assignee also hereby acknowledges and agrees that it shall be solely responsible for compliance with any laws, rules, or regulations governing the ownership, servicing, and/or administration of the Loans from and after the Closing Date.

5.    Assignee specifically indemnifies Assignor against, and shall defend and hold Assignor harmless from (using counsel reasonably satisfactory to Assignor), any and all damages, liabilities, costs, expenses, and losses (including, without limitation, attorneys' fees and costs) that Assignor may sustain or incur by reason of Assignee's failure to comply with the terms and conditions of the Loan Sale Agreement and the foregoing Paragraph 4.

6.    The provisions of this Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective heirs, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Absolute Assignment and Assumption of Deed of Trust and Loan Documents as of the date first set forth above.

"Assignor"
Wells Fargo Bank, National Association

By:  _____
Name:  Stephen F. Marquart
Title:  Senior Vice-President

"Assignee"
Malbco Holdings, LLC

By:  _____
Name:  James Malloy
Title:  Managing Member

*[Acknowledgments on next page]*

EXHIBIT 3
Page 4 of 8

2

STATE OF___TEXAS_____)
                                                    ) §
COUNTY OF _____BEXAR_____)

On ___March  22__, 2012 before me, the undersigned officer, a Notary Public in and for said State, personally appeared <u>Stephen F. Marquart</u>, personally known to me (or proved to me on the basis of satisfactory evidence) to be a <u>Senior Vice-President</u> of <u>Wells Fargo Bank, National Association., a national banking association</u>, and that he as <u>Senior Vice-President</u> being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as <u>Senior Vice-President</u> and did acknowledge the foregoing instrument to be the act and deed of said association.

WITNESS my hand and official seal.

> JO ANNA G. MARTINEZ
> Notary Public, State of Texas
> My Commission Expires
> November 30, 2015

Notary Public
My commission Expires: __11-30-2015__

STATE OF _____)
                                                    ) §
COUNTY OF _____)

On _____, before me, the undersigned officer, a Notary Public in and for said State, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the _____ of _____, and that he/she as such _____, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself/herself as _____ and did acknowledge the foregoing instrument to be the act and deed of said association.

WITNESS my hand and official seal.

Notary Public
My commission Expires: _____

EXHIBIT 3
Page 5 of 8

3

STATE OF __TEXAS_____ )
                                                  ) §
COUNTY OF _____BEXAR_____ )

On _____, 2012 before me, the undersigned officer, a Notary Public in and for said State, personally appeared Stephen F. Marquart, personally known to me (or proved to me on the basis of satisfactory evidence) to be a Senior Vice-President of Wells Fargo Bank, National Association., a national banking association, and that he as Senior Vice-President being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as Senior Vice-President and did acknowledge the foregoing instrument to be the act and deed of said association.

WITNESS my hand and official seal.

_____
Notary Public
My commission Expires: _____

_____

STATE OF _WASHINGTON_____ )
                                                  ) §
COUNTY OF _SPOKANE_____ )

On _MARCH 22, 2012_____, before me, the undersigned officer, a Notary Public in and for said State, personally appeared _JAMES MULLOY_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the _MANAGING MEMBER_ of _MALBCO HOLDINGS, LLC_, and that he/she as such _MANAGING MEMBER_, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself/herself as _MANAGING MEMBER_ and did acknowledge the foregoing instrument to be the act and deed of said association.

WITNESS my hand and official seal.

_____
Notary Public
My commission Expires: _12/3/12_

EXHIBIT 3
Page 6 of 8

3

## SCHEDULE "1"

## DESCRIPTION OF AND BALANCE OF LOANS
## AS OF MARCH 23, 2012

*Om Namah Laxmi, LLC – Obligor/Obligation #0262223744-18, outstanding principal balance of $4,063,938.13 plus accrued interest of $588,774.51 as of March 23, 2012*

1. *Promissory Note dated June 8, 2006, original principal amount $4,357,415.00,*

2. *Note Modification May 1, 2011,*

3. *Business Loan Agreement dated June 6, 2006,*

4. *Commercial Security Agreement dated June 6, 2006,*

5. *Deed of Trust dated June 6, 2006, filed in Ada County, Idaho, on June 8, 2006, as Instrument No. 106090925,*

*(Real Property or its address is commonly known as 800 South Allen Street, Meridian, ID 83642*
*(See Exhibit "A" for Description of Property)*

6. *Modification of Deed of Trust dated May 2nd 2011, filed in Ada County, Idaho, on June 22, 2011, as Instrument No. 111050620,*

7. *First American Title Company of Idaho Title Policy No. NCS-228360-BOI,*

8. *Commercial Guaranty Agreement dated June 6, 2012 – Neela B. Patel,*

9. *Commercial Guaranty Agreement dated June 6, 2012 – Bhupendra R. B. Patel,*

10. *Commercial Guaranty Agreement dated June 7, 2012 –Bhard K. Patel,*

11. *Commercial Guaranty Agreement dated June 7, 2012 – Kanti I. Patel,*

12. *Commercial Guaranty Agreement dated June 6, 2012 – Budget Inn OMRS, LLC,*

13. *Commercial Guaranty Agreement dated June 6, 2012 – OMRS, LLC,*

14. *Commercial Guaranty Agreement dated June 7, 2012 – MRK Enterprises, LLC,*

15. *Commercial Guaranty Agreement dated June 7, 2012 – OM Sai Inc,*

16. *Commercial Guaranty Agreement dated June 7, 2012 – OM Shiv Shakti, LLC, and*

17. *UCC Financing Statement recorded in the Idaho Secretary of State records on May 22, 2006, as Instrument No. 2006-1005903-5.*

EXHIBIT 3
Page 7 of 8

4

**EXHIBIT "A"**
(Description of Property)

Exhibit A where Real Property or its address is commonly known as 800 South Allen Street, Meridian, ID 83642

Lot 13 of AMENDED PLAT OF MAGIC VIEW SUBDIVISION, according to the official plat thereof, filed in Book 52 of Plats at Pages 4445 and 4446, Official Records of Ada County, Idaho.

EXCEPT THEREFROM, that portion condemned by the State of Idaho in Condemnation recorded MARCH 16, 1990, as Instrument No. 9013470, and Deeded to The State of Idaho for right of way purposes in Quitclaim Deed recorded OCTOBER 12, 1988, as Instrument No. 8850216, Official Records, and described as follows:

Beginning at the Northeast corner of Lot 13 in said Amended Magic View
Subdivision; thence along the East line of Lots 13 and 14 of said Amended Magic View Subdivision as follows: Southerly (shown of record to be South 0°22'57.7" East) 45.0 feet, South 2°01'57" West (shown of record to be South 2°00'32.1" West) 43.87 feet, South 2°07'51" West (shown of record to be South 2°06'26.3" West) 366.51 feet to the Southeast corner of said Lot 14; thence along the Southeasterly line of Lot 14 which is coincident with the Northwesterly right of way line of existing Interstate 84 (formerly Interstate 80 N) as follows:
South 56°0'52" West (shown of record to be South 55°59'27" West) 80.58 feet, South 69°57'16" West (shown of record to be South 69°55'51" West) 480.65 feet, South 69°12'10" West (shown of record to be South 69°10'44.6" West) 241.65 feet, Southwesterly (shown of record to be South 69°58'47.4" West) 61.22 feet to the most Southerly corner of said Lot 14; thence along the West and Northwesterly line of said Lot 14 and the Northwesterly line of said Lot 13 as follows: North 27°15'04" West (shown of record to be North 27°16'28.8" West) 26.95 feet, North 20°23'25" East (shown of record to be North 20°22'00" East) 436.48 feet, North 0°21'33" West (shown of record to be North 0°22'57.7" West) 45.46 feet to a point in a line parallel with and 80.0 feet Northwesterly from the centerline of Ramp D-A Survey of the Eagle Road Interchange as shown on the plans of said Interstate 84, Project No. IR-84-1(12)45 Highway Survey; thence along said parallel line as follows: Northeasterly along a 1,034.93 foot radius curve right 425.0 feet, mor or less, to a point opposite Station 2427+14.66 of said Ramp D-A Survey, North 79°18'50" East 116.60 feet to a point opposite Station 2428+29 of said Highway Survey; thence
North 35°43'47" East leaving said parallel line 127.97 feet to a point in the North line of said Lot 13; thence
North 89°38'27" East (shown of record to be North 88°4'25.3" East) along said North line 89.37 feet to the REAL POINT OF BEGINNING.

APN: R5443010133

Commonly known as: 800 S. Allen St., Meridian, ID 83642

EXHIBIT 3
Page 8 of 8

5



**STATE OF OREGON**

Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

**UCC-1**

Oregon Secretary of State
Filing Number:        89415850
Filing Date:    Jan 18, 2013 12:22 AM

Filed Electronically

---

*Action:* Initial Filing

---

*Debtor -*
Individuals Name: Bhupendra Patel
Address 1: 9753 SE Westview Ct.
City: Happy Valley
State: OR, USA
Zip Code: 97086

---

*Debtor -*
Individuals Name: Nila Patel
Address 1: 9753 SE Westview Ct.
City: Happy Valley
State: OR, USA
Zip Code: 97086

---

*Secured Party -*
Organization Name: McLoughlin Lodging Company, LLC
Address 1: c/o M&B LLP
Address 2: 117 SW Taylor Street #200
City: Portland
State: OR, USA
Zip Code: 97204

---

*Collateral -*
All personal property of the debtor, now owned or hereafter acquired.

---

EXHIBIT 4
Page 1 of 3

JUN/20/2014/FRI 04:31 PM         FAX No. 5034170501         P. 003

OR Sec of State
06/20/2014

89415850-1_5890098

Lien#: 89415850-1         UCC

## UCC FINANCING STATEMENT AMENDMENT
**FOLLOW INSTRUCTIONS**

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐
Mukesh Patel
c/o Nicholas J. Henderson
117 SW Taylor Street, Suite 200
Portland, OR 97204
⌐

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| 89415850 | ☐ Fire: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in Item 12 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement.

3. ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9 For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check **one** of these two boxes:    **AND** Check **one** of these three boxes to:

This Change affects ☐ Debtor or ☑ Secured Party of Record | ☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change – provide only **one** name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| McLoughlin Lodging Company, LLC | | | | |
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change – provide only **one** name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | | |
| Patel | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| Mukesh | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Nicholas J. Henderson, 117 SW Taylor Street, Suite 200 | Portland | OR | 97204 | |

8. ☐ **COLLATERAL CHANGE: Also** check **one** of these four boxes:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral:

See Attachment A

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only **one** name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing DEBTOR

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Patel | Mukesh | | |

10. OPTIONAL FILER REFERENCE DATA:

404 FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (Rev. 05/13)

EXHIBIT 4
Page 2 of 3

## Attachment A to UCC Financing Statement Amendment

Debtor Names:      Bhupendra Patel and Nila Patel
Secured Party:     Mukesh Patel

Restated Collateral:

All of Debtors' personal property including, but not limited to all goods, accounts, intangible property, licenses, patents, trademarks, trade names, choses in action, corporate stock, and all membership interests in any limited liability companies (collectively, the "Collateral"). The Collateral shall include all such property now owned and hereafter acquired. Additionally, the Collateral shall include all rights, if any, in such membership interests, and all dividends, distributions, cash, instruments, investment property and other property or proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of such interests, as well as all rights to receive cash and other distributions of assets from corporations or limited liability companies; and all proceeds of any of the foregoing.

EXHIBIT 4
Page 3 of 3

## AMENDED AND RESTATED
## LINE OF CREDIT AND SECURITY AGREEMENT

This Amended and Restated Line of Credit and Security Agreement (the "Agreement") is made and entered into this 8th day of November, 2013 (the "Effective Date"), by and among Mukesh Patel, as assignee of the interests of McLoughlin Lodging Company, LLC, an Oregon limited liability company (the "Lender"), and Bhupendra Patel and Nila (aka Neela) Patel, as individuals residing in Oregon (referred to as "Borrowers"). This Agreement refers to Lender and Borrowers each as a "Party" and collectively as the "Parties."

### RECITALS

A.    The Borrowers' affiliated company, Budget Inn OMRS, LLC ("Budget"), executed a Line of Credit Agreement in the amount of Five-Hundred Thousand Dollars ($500,000) (the "LOC Agreement") in favor of Lender, on or about January 18, 2013. As part of the LOC Agreement, Borrowers guaranteed Budget's indebtedness to Lender, and Borrowers granted Lender a security interest against real and personal property belonging to Borrowers (the "Collateral"). Lender's security interest in the personal property Collateral was perfected on or about January 18, 2013, by the filing of a UCC-1 Financing Statement docketed by the Oregon Secretary of State as Filing No. 89415850 (the "UCC-1").

B.    As of October 28, 2013, Budget and Borrowers were indebted to Lender under the LOC Agreement, in the amount of One-Hundred Thirty-Nine Thousand Six-Hundred Twenty-Nine Dollars and Nine Cents ($139,629.09) That amount and all other amounts advanced thereafter, plus all interest, costs, fees, expenses, and other amounts due and owing at any time under this Agreement shall be referred to as the "Indebtedness." .

C.    Budget has transferred its assets, and is no longer operating or able to pay the Indebtedness under the terms and conditions of the LOC Agreement.

D.    Borrowers and Lender have agreed to amend and restate the LOC Agreement to treat Borrowers as the primarily liable party under the LOC Agreement, grant additional collateral and provide for the continuation of loans from Lender to Borrowers under the LOC as restated hereby. Accordingly, the Parties desire to amend and restate the LOC Agreement on the terms and conditions set forth herein.

### AGREEMENT

In consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

1.    **Credit Line.** Lender hereby agrees to continue for a period of not more than twelve (12) months from the Effective Date (the "Maturity Date") a revolving line of credit (the "Credit Line") for Borrowers in the principal amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000) (the "Credit Limit") which indebtedness shall be evidenced by and repaid in accordance with the terms of this Agreement and the Amended Revolving Line of Credit Note in substantially the form attached hereto as Exhibit A ("Note"). All sums advanced on the Credit Line or pursuant to the terms of this Agreement (each an "Advance") shall become part of the principal of the Note. This Line of Credit can be canceled at any time and any amount . outstanding would be due upon demand.

EXHIBIT 5
Page 1 of 14

BPATEL000272

2.    **Confirmation of Existing Indebtedness.**  Borrowers ratify and confirm the LOC Agreement, and certify, represent and warrant to Lender that: (a) Borrowers are indebted to Lender under the LOC Agreement and, subject to terms and conditions contained herein, owe to Lender all of the Indebtedness; (b) to the best of their knowledge, the LOC Agreement is a legal, valid, and binding obligation of the Borrowers and enforceable against the Borrowers as amended by this Agreement (c) Mukesh Patel is the assignee of all of Lender's rights, title and interest in and to the LOC Agreement and is substituted as Lender for all purposes under the LOC Agreement and this Amended and Restated Line of Credit and Security Agreement

3.    **Advances**

a.  Lender agrees to make funds available under this Credit Line pursuant to the terms of this Agreement, and provided that Lender, in its own discretion and in good-faith, deems borrower financially able to perform under the terms of this Agreement.

b.  Subject to subparagraph 3.a. above, any request for an Advance may be made from time to time and in such amounts as Borrowers may choose, provided, however, any requested Advance will not, when added to the outstanding principal balance of all previous Advances, exceed the Credit Limit. Requests for Advances may be made by oral or written request by either Borrower. For each Advance, properly requested, the Lender shall advance an amount equal to the Advance amount. The Lender may refuse to make any requested Advance if an event of default has occurred and is continuing hereunder either at the time the request is given or the date the Advance is to be made, or if an event has occurred or condition exists which, with the giving of notice or passing of time or both, would constitute an event of default hereunder as of such dates.

4.    **Interest**

All sums advanced pursuant to this Agreement shall bear interest from the date each Advance is made until paid in full at an interest rate of  ten percent (10%) per annum (the "Interest Rate").  Interest will be calculated on a basis of a 360-day year and charged for the actual number of days elapsed.

Notwithstanding the foregoing, upon the occurrence of an Event of Default hereunder, the Interest Rate shall immediately increase to eighteen percent (18%), and shall continue at such rate, both before and after judgment, until the Credit Line has been repaid in full and all of Borrowers' other obligations to Lender hereunder have been fully paid and discharged.

5.    **Repayment**

Subject to Section 3 above, Borrowers shall pay accrued interest on the outstanding principal balance on monthly basis commencing on January 1, 2014, and continuing on the first day of each month thereafter. The entire unpaid principal balance, together with any accrued interest and other unpaid charges or fees hereunder, shall be due and payable on the Maturity Date or demand.  Payment shall be made to the Lender at such place as the Lender may, from time to time, designate in lawful money of the United States of America. All payments received hereunder shall be applied as follows: first, to any late charge; second, to any costs or expenses incurred by Lender in collecting such payment or to any other unpaid charges or expenses due hereunder; third, to accrued interest; fourth, to principal; and fifth, the balance, if any, to such person entitled thereto; provided, however, upon occurrence of an Event of Default, a Lender

AMENDED AND RESTATED LINE OF CREDIT
AND SECURITY AGREEMENT -- PAGE 2

EXHIBIT 5
Page 2 of 14

BPATEL000273

may, in its discretion, change the priority of the application of payments as it deems appropriate. Borrowers may prepay principal and/or interest at any time without penalty. If sufficient Credit Limit availability exists and Lender consents, the interest charges may be added to the loan balance instead of being paid monthly in cash until such time as the Maturity Date or demand. Lender's consent may be withdrawn at any time.

6.    Conditions Precedent

The Lender shall not be required to make any advance hereunder unless and until:

 a All of the documents required by Lender, including a Promissory Note, have been duly executed and delivered to such Lender and shall be in full force and effect.

 b The representations and warranties contained in this Agreement are then true with the same effect as though the representations and warranties had been made at such time. The request for an Advance by Borrowers shall constitute a reaffirmation to Lender that all representations and warranties made herein remain true and correct in all material respects to the same extent as though given the time such request is made, and that all conditions precedent listed in this Paragraph 5 have been, and continue to be, satisfied in all respects as of the date such request is made.

 c No event of default hereunder has occurred and is continuing, and no condition exists or event has occurred which, with the passing of time or the giving of notice or both, would constitute an event of default hereunder.

7.    Representations and Warranties.

In order to induce Lender to enter into this Agreement and to make the advances provided for herein, Borrowers represent and warrant to Lender as follows:

 a. Borrowers are residents of the State of Oregon.

 b Borrowers have the authority and power to execute and deliver any document required hereunder and to perform any condition or obligation imposed under the terms of such documents.

 c There is no action, suit, investigation, or proceeding pending or, to the knowledge of Borrowers, threatened, against or affecting Borrowers or any of their assets which, if adversely determined, would have a material adverse affect on the financial condition of Borrowers or the operation of Borrowers' business, except as otherwise disclosed to Lender.

 d. No information or report furnished by Borrowers to Lender in connection with the negotiation of this Agreement, if any, contained any material misstatement of fact or omitted to state a material fact or any fact necessary to make the statements contained therein not misleading.

 e. Borrowers have all necessary permits, licenses, governmental authorization and consents necessary to conduct their business.

AMENDED AND RESTATED LINE OF CREDIT
AND SECURITY AGREEMENT – PAGE 3

EXHIBIT 5
Page 3 of 14

BPATEL000274

8.     **Affirmative Covenants.** So long as any sum remains unpaid hereunder, in whole or in part, Borrowers covenant and agree that except with the prior written consent of the Lender, which consent will not be unreasonably withheld, it shall do the following:

a.   Borrowers shall furnish to Lender such financial information as Lender may from time to time require, including but not limited to, financial statements and tax returns. Borrowers shall furnish such additional information regarding its business affairs and financial condition as Lender may from time to time in good faith request.

b.   Borrowers shall duly observe and conform to all valid requirements of any governmental authority relative to the conduct of their business, their properties, or their assets and will maintain and keep in full force and effect their corporate existence and all licenses and permits necessary to the proper conduct of their business.

c.   Borrowers shall keep proper books of records and accounts in which full, true, and correct entries will be made of all dealings or transactions relating to their business and activities.

d.   Borrowers shall (1) file all applicable federal, state, and local tax returns or other statements required to be filed in connection with its business, including those for income taxes, sales taxes, property taxes, payroll taxes, payroll withholding amounts, FICA contributions, and similar items; (2) maintain appropriate reserves for the accrual of the same; and (3) pay when due all such taxes, or sums or assessments made in connection therewith. Provided, however, that (until distraint, foreclosure, sale, or similar proceedings have been commenced) nothing herein will require Borrowers to pay any sum or assessment, the validity of which is being contested in good faith by proceedings diligently pursued and as to which adequate reserves have been made.

e.   Borrowers shall permit any person designated in writing by Lender to visit and inspect any of the books and financial records of Borrowers and to discuss their affairs and finances, all at such reasonable times and as often as Lender may in good faith request, subject to any reasonable conditions imposed by Borrowers.

9.     **Negative Covenants.** So long as any amounts due hereunder remain unpaid in whole or in part, Borrowers covenant that except with the prior written consent of the Lender, which consent will not be unreasonably withheld, it will not do any of the following:

a.   Borrowers shall not create or permit to exist any lien, claim, or encumbrance on the assets of Borrowers or any part thereof, except as may exist as of the date of the LOC Agreement or may be granted to Lender

10.    **Events of Default.** An event of default (each, an "Event of Default") will occur if any of the following events occurs:

AMENDED AND RESTATED LINE OF CREDIT
AND SECURITY AGREEMENT – PAGE 4

EXHIBIT 5
Page 4 of 14

BPATEL000275

a. Failure to pay any principal or interest hereunder within ten (10) days after the same becomes due.

b. Any representation or warranty made by Borrowers in this Agreement or in connection with any borrowing or request for an advance hereunder, or in any certificate, financial statement, or other statement furnished by Borrowers to Lender is untrue in any material respect at the time when made.

c. Default by Borrowers in the observance or performance of any other covenant or agreement contained in this Agreement, other than a default constituting a separate and distinct event of default under this Paragraph 10.

d. Default by Borrowers in the observance or performance of any other covenant or agreement contained in any other document or agreement made and given in connection with this Agreement, other than a default constituting a separate and distinct event of default under this Paragraph 10, and the continuance of the same unremedied for a period of thirty (30) days after notice thereof is given to Borrowers.

e. Any of the documents executed and delivered in connection herewith for any reason ceases to be valid or in full force and effect or the validity or enforceability of which is challenged or disputed by any signer thereof, other than Lender.

f. Borrowers shall default in the payment of principal or interest on any other obligation for borrowed money other than hereunder, or defaults in the payment of the deferred purchase price of property beyond the period of grace, if any, provided with respect thereto, or defaults in the performance or observance of any obligation or in any agreement relating thereto, if the effect of such default is to cause or permit the holder or holders of such obligation (or trustee on behalf of such holder or holders) to cause such obligation to become due prior to the stated maturity.

g. Filing by Borrowers of a voluntary petition in bankruptcy seeking reorganization, arrangement or readjustment of debts, or any other relief under the Bankruptcy Code as amended or under any other insolvency act or law, state or federal, now or hereafter existing.

h. The filing of an involuntary petition against Borrowers in bankruptcy seeking reorganization, arrangement or readjustment of debts, or any other relief under the Bankruptcy Code as amended, or under any other insolvency act or law, state or federal, now or hereafter existing, and the continuance thereof for sixty (60) days undismissed, unbonded, or undischarged.

i. All or any substantial part of the property of Borrowers shall be condemned, seized, levied, executed upon, or otherwise appropriated, or custody or control of such property is assumed by any governmental agency or any court of competent jurisdiction, and is retained for a period of thirty (30) days.

11.    **Remedies.** Upon the occurrence of an Event of Default as defined above, the Lender may declare the entire unpaid principal balance, together with accrued interest thereon,

EXHIBIT 5
Page 5 of 14
BPATEL000276

to be immediately due and payable without presentment, demand, protest, or other notice of any kind. Lender may suspend or terminate any obligation it may have hereunder to make additional Advances. To the extent permitted by law, Borrowers waive any rights to presentment, demand, protest, or notice of any kind in connection with this Agreement. No failure or delay on the part of the Lender in exercising any right, power, or privilege hereunder will preclude any other or further exercise thereof or the exercise of any other right, power, or privilege. The rights and remedies provided herein are cumulative and not exclusive of any other rights or remedies provided at law or in equity. Borrowers agree to pay all costs of collection incurred by reason of the default, including court costs and reasonable attorney's fees, whether or not the attorney is a salaried employee of Lender, including such expenses incurred before or after any legal action or Bankruptcy proceeding involving Borrower has commenced, during the pendency of such proceedings, and continuing to all such expenses in connection with any appeal to higher courts arising out of matters associated herewith.

12.    Security/Collateral.

As security for all obligations of Borrowers to Lender, including the obligation for full and prompt payment of the Indebtedness, Borrowers reaffirm and grant Lender a security interest in all of Borrowers' real and personal property, including but not limited to all business entities owned by Borrowers, any improvements, equipment, inventory, products, proceeds, and replacements and other assets more fully described as Collateral below to secure all advances under this Amended and Restated Line of Credit Agreement and the Note. Borrowers shall execute a separate deed of trust in favor of Lender to evidence the security interest in their real property. In addition, Borrowers hereby appoint Lender as their true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (a) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (b) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and, in the place and stead of Borrowers, to execute and deliver its release and settlement for the claim; and (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either it its own name or in the names of Borrowers, or otherwise, which in the discretion of Lender may deem to be necessary or advisable. This power is given as security for the Indebtedness and obligations in this Agreement, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

"Collateral" means all real and personal property of Borrowers including but not limited to all of Borrowers' goods, accounts, intangible property, licenses, patents, trademarks, trade names, choses in action, and all membership interests of Borrowers, if any, in the Companies, and Borrowers' personal residence. The Collateral shall include all such property now owned and hereafter acquired. Additionally, the Collateral shall include all rights, if any, in such membership interests, and all dividends, distributions, cash, instruments, investment property and other property or proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of such interests, as well as all rights to receive cash and other distributions of assets from the Companies; and all proceeds of any of the foregoing.

"Companies" means any company in which Borrowers have an interest including but not limited to: (a) SANDY INN OMRS LLC, an Oregon limited liability company; (b) HMB HOSPITALITY GROUP LLC, an Oregon limited liability company; (c) AIRPORT INN OMRS LLC, an Oregon limited liability company; (d) VALU INN SHREE RAJ LLC, an Oregon limited liability company; (e) BUDGET INN OMRS LLC, an Oregon limited liability company; (f) OM

AMENDED AND RESTATED LINE OF CREDIT
AND SECURITY AGREEMENT -- PAGE 6

EXHIBIT 5
Page 6 of 14

BPATEL000277

SHIV GANESH LLC, an Idaho limited liability company; (g) THE OM CLACKAMAS LLC, an Oregon limited liability company; and (h) OMRS INC., an Oregon corporation.

13.    **Notice.** All notices or other communications required or permitted by this Agreement shall be in writing and shall be deemed given if delivered personally to the party for whom such notice was intended  or if delivered by mail, at the expiration of the third day after the date of deposit in the United States mail, postage pre-paid, certified or registered, return receipt requested, to the respective parties at the Parties' last known address, or at such other address that a party shall specify by notice given to the other parties in accordance with this section

14.    **General Provisions.** All representations and warranties made in this Agreement and any Promissory Note shall survive the execution and delivery of this Agreement and the making of any loans hereunder  This Agreement will be binding upon and inure to the benefit of Borrowers and Lender, their respective successors and assigns, except that neither Lender nor Borrowers may assign or transfer its rights or delegate their duties hereunder without the prior written consent of the other Party  Consent may be withheld without reason or cause  This Agreement, the Promissory Note, and all documents and instruments associated herewith will be governed by and construed and interpreted in accordance with the laws of the State of Oregon  Time is of the essence hereof  Lender may set off against any debt or account it owes Borrowers, now existing or hereafter arising, in accordance with its rules and regulations governing deposit accounts then in existence, and for such purposes is hereby granted a security interest in all such accounts  This Agreement will be deemed to express, embody, and supersede any previous understanding, agreements, or commitments, whether written or oral, between the parties with respect to the general subject matter hereof  This Agreement may not be amended or modified except in writing signed by the parties

15.    **Counterparts; Facsimile Signatures.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original instrument, and all of which shall constitute a single agreement  The signature of a party to any counterpart shall be sufficient to legally bind such party  Lender may remove the signature pages from one or more counterparts and attach them to any other counterpart for the purpose of having a single document containing the signatures of all parties  Any party may effect the execution and delivery of this Agreement by signing the same and sending a copy thereof to Lender or its attorney by facsimile transmission  Such facsimile document, including the signatures thereon, shall be treated in all respects as an original instrument bearing an original signature  Any party sending an executed copy by facsimile transmission in the foregoing manner shall also send the original thereof to Lender within five (5) days thereafter, but failure to do so shall not invalidate or otherwise affect the legality or enforceability of the facsimile document.

16.    **Waiver of Jury Trial.** BORROWERS AND LENDER EACH AGREE TO WAIVE THE RIGHT TO HAVE A JURY HEAR, DETERMINE, OR MAKE ANY RECOMMENDATION WITH RESPECT TO THIS AGREEMENT, THE PROMISSORY NOTE, AND ANY CLAIMS ARISING IN CONNECTION HEREWITH OR WITH ANY OF THE FOREGOING, WHETHER SUCH CLAIMS ARE BASED ON PRINCIPLES OF STATUTORY, CONTRACT, OR TORT LAW.  THE PARTIES AGREE THAT ALL SUCH MATTERS SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.  THE PARTIES ACKNOWLEDGE THAT THIS WAIVER WAS A MATERIAL FACTOR IN THEIR DECISION TO ENTER INTO THIS AGREEMENT AND ENGAGE IN THE TRANSACTIONS DESCRIBED HEREIN.

EXHIBIT 5
Page 7 of 14

BPATEL000278

17.    **Entire Agreement.**  This Agreement, together with the Amended Revolving Line of Credit Note ("Note") and related security documents, constitutes the entire understanding and agreement of the parties with respect to the general subject matter hereof, supersede all prior negotiations and agreements with respect thereto  may not be contradicted by evidence of any alleged oral agreement; and may not be amended  modified  or rescinded in any manner except by a written agreement signed by Lender which clearly and unequivocally expresses an intent to amend, modify, or rescind the same.

IN WITNESS WHEREOF, the parties have executed this Amended and Restated Line of Credit Agreement effective as of the Effective Date.

BORROWERS:                                         LENDER:

_____                      _____
Bhupendra Patel                                        Mukesh Patel

_____
Nila Patel

AMENDED AND RESTATED LINE OF CREDIT
AND SECURITY AGREEMENT -- PAGE 8

EXHIBIT 5
Page 8 of 14

BPATEL000279

AMENDED REVOLVING LINE OF CREDIT NOTE

$500,000                                                    Portland, Oregon

      FOR VALUE RECEIVED, Bhupendra Patel and Nila (aka Neela) Patel ("Borrower") promises to pay to the order of Mukesh Patel ("Lender") at such place as the Lender hereof may designate, in lawful money of the United States of America and in immediately available funds, the principal sum of Five Hundred Thousand Dollars ($500,000) ("Credit Limit"), or so much thereof as may be advanced and be outstanding, with interest thereon, to be computed on each advance from the date of its disbursement as set forth herein. All indebtedness owing under the promissory note(s) executed in connection with the original Line of Credit Agreement dated January 18, 2013 are reaffirmed and rolled into and made a part of this Amended Revolving Line of Credit Note ("Note").

INTEREST:

      (a)    Interest.  The outstanding principal balance of this Note shall bear interest as set forth in that certain Amended and Restated Line of Credit and Security Agreement executed by Borrower and Lender dated November 8, 2013, as amended from time to time (the "Loan Agreement").

      (b)    Payment of Interest. Interest on this Note shall be due and payable in arrears on a monthly basis commencing January 1, 2014 and the first day of each month thereafter. If sufficient Credit Limit availability exists, the interest charges may be added to the loan balance instead of being paid monthly in cash until such time as the Maturity Date or demand.

BORROWING AND REPAYMENT:

      (a)    Borrowing.  Borrower may from time to time during the term of this Note borrow, partially or wholly repay its outstanding borrowings, and reborrow, subject to all of the limitations, terms and conditions of this Note and the Loan Agreement; provided however, that the total outstanding borrowings under this Note shall not at any time exceed $500,000. Borrower has no obligation to borrow any minimum amount from Lender.

      (b)    Advances.  Advances hereunder, to the total amount of the principal sum stated above, may be made by Lender at the oral or written request of any Borrower, and any such requested advances, when so made, shall be conclusively presumed to have been made to or for the benefit of Borrower.

      (c)    Repayment.  All amounts outstanding under this Note shall be due and payable on the "Maturity Date," as such term is defined in the Loan Agreement.

      (d)    Application of Payments.  Each payment made on this Note shall be credited first to any fees and charges then due, then interest then due and finally to the outstanding principal balance hereof.

PREPAYMENT:

      Borrower may prepay all or any portion of this Note at any time in any amount and without penalty.

AMENDED REVOLVING LINE OF CREDIT NOTE -- PAGE 1

EXHIBIT 5
Page 9 of 14

BPATEL000280

EVENTS OF DEFAULT:

The occurrence of any of the following shall constitute an "Event of Default" under this Note:

(a)    An Event of Default occurs under the Loan Agreement; and

(b)    The failure of Borrower to pay when due or when demanded any principal, interest, fees or other charges hereunder.

(c)    Any default under any Deed of Trust or other security agreements executed in connection with or related to the Loan Agreement or this Note.

MISCELLANEOUS:

(a)    <u>Remedies</u>.  Upon the occurrence of any Event of Default, Lender may exercise all rights and remedies set forth in the Loan Agreement.  In addition, Lender may immediately declare all sums of principal and interest outstanding hereunder and any other amounts owing hereunder to be immediately due and payable.  Borrower shall pay to Lender immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including reasonable attorneys' fees, expended or incurred by Lender in connection with the enforcement of Lender's rights and/or the collection of any amounts which become due to Lender under this Note, and the prosecution or defense of any action in any way related to this Note, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in an arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding relating to Borrower or any other person or entity. All remedies are cumulative, and such remedies shall not be deemed to alter the demand nature of this Note.  All remedies are in addition to any remedies set forth in the Loan Agreement or in any other agreement or document executed by Borrower in connection with the Loan Agreement.

(b)    <u>Governing Law</u>.  THE PROVISIONS OF THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF OREGON, WITHOUT REFERENCE TO APPLICABLE CONFLICT OF LAW PRINCIPLES. MAKER CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF OREGON COURTS IN CONNECTION WITH THE RESOLUTION OF ANY DISPUTES RELATING TO THIS NOTE. MAKER AND HOLDER WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION BASED ON OR RELATED TO THIS NOTE.

UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.

(c)    <u>Assigns</u>.  The provisions of this Note shall not be assignable without the prior written consent of the other party.  Consent may be withheld without reason or cause.

(d)    <u>Construction</u>.  Whenever possible each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this

EXHIBIT 5
Page 10 of 14

BPATEL000281

Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first written above.

_____
Bhupendra Patel

_____
Nila Patel

037003/00001/5074282v3037003/00001/5074282v2

EXHIBIT 5
Page 11 of 14
BPATEL000282

## EXHIBIT A

### AMENDED REVOLVING LINE OF CREDIT NOTE

$500,000

Portland, Oregon

FOR VALUE RECEIVED, Bhupendra Patel and Nila (aka Neela) Patel ("Borrower") promises to pay to the order of Mukesh Patel ("Lender") at such place as the Lender hereof may designate, in lawful money of the United States of America and in immediately available funds, the principal sum of Five Hundred Thousand Dollars ($500,000) ("Credit Limit"), or so much thereof as may be advanced and be outstanding, with interest thereon, to be computed on each advance from the date of its disbursement as set forth herein. All indebtedness owing under the promissory note(s) executed in connection with the original Line of Credit Agreement dated January 18, 2013 are reaffirmed and rolled into and made a part of this Amended Revolving Line of Credit Note ("Note")

INTEREST:

(a)     Interest.  The outstanding principal balance of this Note shall bear interest as set forth in that certain Amended and Restated Line of Credit and Security Agreement executed by Borrower and Lender dated November 8, 2013, as amended from time to time (the "Loan Agreement").

(b)     Payment of Interest.  Interest on this Note shall be due and payable in arrears on a monthly basis commencing January 1, 2014 and the first day of each month thereafter. If sufficient Credit Limit availability exists, the interest charges may be added to the loan balance instead of being paid monthly in cash until such time as the Maturity Date or demand.

BORROWING AND REPAYMENT:

(a)     Borrowing.  Borrower may from time to time during the term of this Note borrow, partially or wholly repay its outstanding borrowings, and reborrow, subject to all of the limitations, terms and conditions of this Note and the Loan Agreement; provided however, that the total outstanding borrowings under this Note shall not at any time exceed $500,000. Borrower has no obligation to borrow any minimum amount from Lender

(b)     Advances.  Advances hereunder, to the total amount of the principal sum stated above, may be made by Lender at the oral or written request of any Borrower, and any such requested advances, when so made, shall be conclusively presumed to have been made to or for the benefit of Borrower

(c)     Repayment.  All amounts outstanding under this Note shall be due and payable on the "Maturity Date," as such term is defined in the Loan Agreement.

(d)     Application of Payments.  Each payment made on this Note shall be credited first to any fees and charges then due, then interest then due and finally to the outstanding principal balance hereof.

AMENDED REVOLVING LINE OF CREDIT NOTE – PAGE 1

EXHIBIT 5
Page 12 of 14

BPATEL000283

PREPAYMENT:

Borrower may prepay all or any portion of this Note at any time in any amount and without penalty.

EVENTS OF DEFAULT:

The occurrence of any of the following shall constitute an "Event of Default" under this Note:

(a)     An Event of Default occurs under the Loan Agreement; and

(b)     The failure of Borrower to pay when due or when demanded any principal, interest, fees or other charges hereunder.

(c)     Any default under any Deed of Trust or other security agreements executed in connection with or related to the Loan Agreement or this Note.

MISCELLANEOUS:

(a)     Remedies. Upon the occurrence of any Event of Default, Lender may exercise all rights and remedies set forth in the Loan Agreement. In addition, Lender may immediately declare all sums of principal and interest outstanding hereunder and any other amounts owing hereunder to be immediately due and payable. Borrower shall pay to Lender immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including reasonable attorneys' fees, expended or incurred by Lender in connection with the enforcement of Lender's rights and/or the collection of any amounts which become due to Lender under this Note, and the prosecution or defense of any action in any way related to this Note, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in an arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding relating to Borrower or any other person or entity. All remedies are cumulative, and such remedies shall not be deemed to alter the demand nature of this Note. All remedies are in addition to any remedies set forth in the Loan Agreement or in any other agreement or document executed by Borrower in connection with the Loan Agreement.

(b)     Governing Law. THE PROVISIONS OF THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF OREGON, WITHOUT REFERENCE TO APPLICABLE CONFLICT OF LAW PRINCIPLES. MAKER CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF OREGON COURTS IN CONNECTION WITH THE RESOLUTION OF ANY DISPUTES RELATING TO THIS NOTE. MAKER AND HOLDER WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION BASED ON OR RELATED TO THIS NOTE.

UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.

AMENDED REVOLVING LINE OF CREDIT NOTE – PAGE 2

EXHIBIT 5
Page 13 of 14
BPATEL000284

(c)  Assigns.  The provisions of this Note shall not be assignable without the prior written consent of the other party.  Consent may be withheld without reason or cause.

(d)  Construction.  Whenever possible each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first written above.

Bhupendra Patel

Nila Patel

AMENDED REVOLVING LINE OF CREDIT NOTE -- PAGE 3

EXHIBIT 5
Page 14 of 14

BPATEL000285

| Clackamas County Official Records | 2013-080323 |
|---|---|
| Sherry Hall, County Clerk | 12/04/2013 10:49:39 AM |
| M-TD          Cni=1 Sin=2 LESLIE<br>$25.00 $10.00 $10.00 $17.00 | $68.00 |

After Recording, return to:
Nicholas J. Henderson
Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 200
Portland, OR 97204

Grantors' Name and Address:
Bhupendra and Neela Patel
9753 SE Westview Ct.
Happy Valley, OR 97086

Beneficiary's Name and Address:
Mukesh Patel
c/o Nicholas J. Henderson
Motschenbacher & Blattner, LLC
117 SW Taylor Street, Suite 200
Portland, OR 97204

LINE OF CREDIT DEED OF TRUST

The maximum principal amount to be advanced pursuant to the credit agreement secured by this Line of Credit Deed of Trust is $500,000. The maturity date of the credit agreement secured by this Line of Credit Deed of Trust, exclusive of any option to renew or extend such maturity date is November 8, 2014.

THIS DEED OF TRUST, made this 8th day of November, 2013, between Bhupendra Patel and Neela Patel ("Grantors"), and WFG National Title Insurance Company ("Trustee"), whose address is 12909 SW 68th Pkwy # 350 Portland, OR 97223, and Mukesh Patel ("Beneficiary") whose mailing address is 117 SW Taylor Street, Suite 200, Portland OR 97204, Attn: Nicholas J. Henderson.

WITNESSETH: Grantors hereby bargain, sell and convey to Trustee in Trust, with power of sale, the real property located on 9753 SE Westview Ct., Happy Valley, Oregon 97086, more fully described as:

Lot 35, WESTVIEW ADJUSTMENT, in the City of Happy Valley, County of Clackamas and State of Oregon

Tax ID No: 01451761

which real property is not used principally for agricultural or farming purposes, together with all the tenements, hereditament, and appurtenances now or hereafter thereunto belonging or in any wise appertaining, and the rents, issues and profits thereof.

This Line of Credit Deed of Trust is for the purpose of securing performance of each agreement of Grantors herein contained, and the payment by Grantors of all amounts due in satisfaction of each obligation of Grantors in their Amended and Restated Line of Credit and Security Agreement and Amended Revolving Line of Credit Note with Beneficiary.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, GRANTORS COVENANT AND AGREE:

1. To keep the property in good condition and repair; permit no waste thereof; to complete any building, structure or improvement being built or about to be built thereon; to restore promptly any building,

PAGE 1 - LINE OF CREDIT DEED OF TRUST

C:\Users\nancy\AppData\Roaming\Internwnan\Wwk\Scr\VSR.Port\PPDXOANCYC\509463\1_1.doc

Title Data, Inc. CH POR10563 CL 2013080323.001

EXHIBIT 6<br>Page 1 of 5

structure or improvement there on which may be damaged or destroyed; and to comply with all law, ordinances, regulations, covenants, conditions and restrictions affecting the property.

2. To pay before delinquent all lawful taxes and assessments upon the property; to keep the property free and clear of all other charges, liens or encumbrances impairing the security of this Deed of Trust.

3. To keep all buildings now or hereafter erected on the property described herein continuously insured against loss by fire or other hazards in an amount not less than the total debt secured by this Deed of Trust. All policies shall be held by the Beneficiary, and be in such companies as the Beneficiary may approve and have loss payable first to the beneficiary as its interest may appear and then to the Grantors. The amount collected under any insurance policy may be applied upon any indebtedness hereby secured in such order as the Beneficiary shall determine. Such application by the Beneficiary shall not cause discontinuance of any proceedings to foreclose this Deed of Trust. In the event of foreclosure, all rights of the Grantors in insurance policies then in force shall pass to the purchaser at the foreclosure sale.

4. To defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses, including cost of title search and attorney's fees actually incurred, as provided by statute.

5. Should Grantors fail to pay when due any taxes, assessments, insurance premiums, liens, encumbrances or other charges against the property hereinabove described, Beneficiary may pay the same, and the amount so paid, with interest at the rate set forth in the note secured hereby, shall be added to and become a part of the debt secured in this Deed of Trust.

IT IS MUTUALLY AGREED THAT:

1. In the event any portion of the property is taken or damaged in an eminent domain proceeding, the entire amount of the award or such portion thereof as may be necessary to fully satisfy the obligation secured hereby, shall be paid to Beneficiary to be applied to said obligation.

2. By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive its right to require prompt payment when due of all other sums so secured or to declare default or failure to so pay.

3. The Trustee shall reconvey all or any part of the property covered by this Deed of Trust to the person entitled thereto, on written request of the Grantors and the Beneficiary, or upon satisfaction of the obligation secured and written request for reconveyance made by the Beneficiary or the person entitled thereto.

4. Upon any default by Grantors hereunder, Beneficiary may, at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the property or any part thereof, in its own name, sue or otherwise collect the rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.

5. Upon default by Grantors in payment of any indebtedness secured hereby or in Grantors' performance of any agreement hereunder, time being of the essence with respect to such payment and/or performance, the Beneficiary may declare all sums secured hereby immediately due and payable. In such event, the Beneficiary may elect to proceed to foreclose this trust deed in equity as a mortgage or direct the Trustee to foreclose this trust deed by advertisement and sale, or may direct the Trustee to pursue any other right

PAGE 2 - LINE OF CREDIT DEED OF TRUST

Title Data, Inc. CH POR10563 CL 2013080323.002

EXHIBIT 6
Page 2 of 5

or remedy, either at law or in equity, which the beneficiary may have. In the event the Beneficiary elects to foreclose by advertisement and sale, the Beneficiary or the Trustee shall execute and cause to be recorded a written notice of default and election to sell the property to satisfy the obligations secured hereby whereupon the Trustee shall fix the time and place of sale, give notice thereof as then required by law and proceed to foreclose this trust deed in the manner provided in ORS 86.735 to 86.795.

6. After the Trustee has commenced foreclosure by advertisement and sale, and at any time prior to 5 days before the date the Trustee conducts the sale, the Grantors or any other person so privileged by ORS 86.753 may cure the default or defaults. If the default consists of a failure to pay, when due, sums secured by the trust deed, the default may be cured by paying the entire amount due at the time of the cure other than such portion as would not then be due had no default occurred. Any other default that is capable of being cured may be cured by tendering the performance required under the obligation or trust deed. In any case, in addition to curing the default or defaults, the person effecting the cure shall pay to the Beneficiary all costs and expenses actually incurred in enforcing the obligation of the trust deed, together with Trustee and attorney fees not exceeding the amounts provided by law.

7. Otherwise, the sale shall be held on the date and at the time and place designated in the notice of sale or the time to which the sale may be postponed as provided by law. The Trustee may sell the property either in one parcel or in separate parcels and shall sell the parcel or parcels at auction to the highest bidder for cash, payable at the time of sale. Trustee shall deliver to the purchaser its deed in form as required by law conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in the deed of any matters of fact shall be conclusive proof of the truthfulness thereof. Any person, excluding the Trustee, but including the grantors and beneficiary, may purchase at the sale.

8. When Trustee sells pursuant to the powers provided herein, Trustee shall apply the proceeds of sale to payment of: (1) the expenses of sale, including the compensation of the Trustee and a reasonable charge by Trustee's attorney; (2) to the obligation secured by the trust deed; (3) to all persons having recorded liens subsequent to the interest of the Trustee in the trust deed as their interests may appear in the order of their priority; and (4) the surplus, if any, to the Grantors, or to any successor in interest entitled to such surplus.

9. In the event of the death, incapacity, disability or resignation of Trustee, Beneficiary may appoint in writing a successor Trustee, and upon the recording of such appointment in the mortgage records of the county in which this Deed of Trust is recorded, the successor trustee shall be vested with all powers of the original trustee. The trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action preceding which Grantors, Trustee or Beneficiary shall be a party unless such action or proceeding is brought by the Trustee.

10. This Deed of Trust applies to, inures to the benefit of, and is binding not only on the parties hereto, but on their heirs, devisees, legatees, administrators, executors, successors and assigns. The term Beneficiary shall mean the holder and owner of the note secured hereby, whether or not named as Beneficiary herein.

11. This Deed of Trust shall be payable in full in the event of any sale or other transfers of premises by Grantors.

**WARNING: Unless Grantors provide Beneficiary with evidence of insurance coverage as required by the contract or loan agreement between them, Beneficiary may purchase insurance at Grantors' expense to protect Beneficiary's interest. This insurance may, but need not, also protect Grantors' interest. If the collateral becomes damaged, the coverage**

PAGE 3 - LINE OF CREDIT DEED OF TRUST

Title Data, Inc. CH POR10563 CL 2013080323.003

EXHIBIT 6
Page 3 of 5

purchased by Beneficiary may not pay any claim made by or against Grantors. Grantors may later cancel the coverage by providing evidence that Grantors has obtained property coverage elsewhere. Grantors are responsible for the cost of any insurance coverage purchased by Beneficiary, which cost may be added to Grantors' contract or loan balance. If it so added, the interest rate on the underlying contract or loan will apply to it. The effective date of coverage may be the date Grantors' prior coverage lapsed or the date Grantors failed to provide proof of coverage. The coverage Beneficiary purchases may be considerably more expensive than insurance Grantors might otherwise obtain alone and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

The Grantors warrant that the proceeds of the loan represented by the above-described note and this trust deed are for business or commercial purposes only.

This deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, personal representatives, successors and assigns. The term beneficiary shall mean the holder and owner, including pledgee, of the contract secured hereby, whether or not named as a beneficiary herein.

In construing this trust deed, it is understood that the Grantors, Trustee and/or Beneficiary may each be more than one person; that if the context so requires, the singular shall be taken to mean and include the plural, and that generally all grammatical changes shall be made, assumed and implied to make the provisions hereof apply equally to corporations and to individuals.

IN WITNESS WHEREOF, the Grantors have executed this instrument the day and year first written above.

_____
Bhupendra Patel

_____
Neela Patel

STATE OF OREGON )
                          ) ss.
COUNTY OF CLACKAMAS )

On this day personally appeared before me Bhupendra Patel and Neela Patel, to me known to be the individuals described in and who executed the within and foregoing instrument, and acknowledged that they signed the same as their free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this 8TH day of November, 2013

_____
SHIRISH B. PATEL
NOTARY PUBLIC in and for the State of OREGON
Commission Expires: 2nd July 2016

OFFICIAL SEAL
SHIRISH B PATEL
NOTARY PUBLIC - OREGON
COMMISSION NO. 489696
MY COMMISSION EXPIRES JULY 02, 2016

PAGE 4 - LINE OF CREDIT DEED OF TRUST

OFFICIAL SEAL
SHIRISH B. PATEL
NOTARY PUBLIC-OREGON
COMMISSION NO 489696
MY COMMISSION EXPIRES JULY 02, 2016

EXHIBIT 6
Page 4 of 5

037065/00001/5096053v1

PAGE 5 - LINE OF CREDIT DEED OF TRUST

Title Data, Inc. CH POR10563 CL 2013080323.005

EXHIBIT 6
Page 5 of 5